**THERMAL MANAGEMENT, INC., Plaintiff,**

v.

**COACTIVE NETWORKS f/k/a Coactive Aesthetics, Defendant.**

No. 99 C 5210.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 2, 2000.

Thomas Wilson Waters, Kemp & Grzelakowski, Ltd., Oak Brook, IL, for Thermal Management Inc., plaintiff.

Marion B. Adler, Jodi Rosen Wine, Hedlund, Hanley & John, Chicago, IL, for Coactive Networks fka Coactive Aesthetics, Inc., defendant.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Thermal Management, Inc. ("TMI"), filed a two-count complaint against defendant Coactive Aesthetics, Inc.

("Coactive"), a California corporation, on August 10, 1999.[1] Count I alleges that as a direct and proximate result of defendant defaming plaintiff, plaintiff was forced to defend itself in a counterclaim brought by the General Services Administration ("GSA"). Plaintiff requests judgment in excess of $180,000, the amount plaintiff claims was spent on attorney's fees and costs in GSA administrative hearings. Count II alleges that defendant was unjustly enriched, and plaintiff seeks judgment for $15,935.64. Defendant has filed a motion for partial summary judgment on Count I, pursuant to Fed.R.Civ.P. 56, arguing that plaintiff's defamation claim is barred by the one-year Illinois statute of limitations.

## FACTS[2]

Plaintiff, a self-described installing manufacturer engaged in the construction of customized heating and ventilation systems, entered into a contract with GSA in January 1995. The contract required plaintiff to provide certain improvements to the heating, ventilation, and air conditioning (HVAC) system at the Everett McKinley Dirksen Federal Building in Chicago. Specifically, plaintiff alleges in its complaint that it contracted to install a "vertical backbone" between the sub-basement and the 30th floor of the Dirksen Building and to install one general purpose computer on each floor. Plaintiff alleges that it purchased 100 computer boards ("controllers"), model number CA386–N1, from defendant for use in its contract with GSA, and installed a number of these computer boards in the Dirksen Building. According to plaintiff, GSA terminated its contract with plaintiff "for convenience (i.e., without cause)" on January 6, 1997, although plaintiff's work on the Dirksen Building project was not yet complete.

On March 10, 1997, representatives of defendant, GSA, and Teng & Associates (a consultant hired by GSA after plaintiff was terminated) evaluated the installation work that plaintiff had performed in the Dirksen Building prior to its termination. Defendant's representative inspected plaintiff's installation of the Coactive CA386–N1 controllers and memorialized these observations in a May 1, 1997, letter sent from defendant to GSA ("the Coactive letter"). Specifically, the letter's author detailed to GSA that "(a) TMI had improperly installed Ethernet cards on Coactive's CA386–N1 controllers; and (b) that the Coactive CA38[6]–N1 controllers that TMI had installed could not function as LonWorks/Ethernet gateways, because they had no gateway software installed on them." Plaintiff alleges that the Coactive letter defamed plaintiff and its business and that the statements in the letter were made with actual malice. Plaintiff further alleges that it was unaware of the exact language of the Coactive letter until September 9, 1998, when the letter was produced as part of the discovery resulting from an action brought by plaintiff against GSA before the Board of Contract Appeals, General Services Administration.

On January 15, 1998, GSA sent plaintiff a copy of a May 16, 1997, report ("the Teng report") containing Teng & Associates' evaluation of plaintiff's performance on the Dirksen Building project, in which Teng & Associates repeats several statements by defendant about plaintiff's performance. Plaintiff admits in its responsive statement of facts pursuant to LR 56.1 that the comments plaintiff alleges are defamatory are the same comments as those repeated in the Teng report. Plaintiff responded to GSA on March 12, 1998, acknowledging and addressing the Teng report and its assessment of plaintiff's work performance.

---

1. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1331. The parties agree that the substantive law of Illinois applies under *Erie RR. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. The following facts are undisputed unless otherwise noted.

Plaintiff submits the affidavit of its president, William Sengpiel, who attests that subsequent to its March 12, 1998, response to GSA, he made a Freedom of Information Act ("FOIA") request to GSA to obtain reports and correspondence between defendant and GSA. Defendant contests this fact, arguing that plaintiff's FOIA request to GSA was made prior to March 12, 1998. Defendant has provided the court with a copy of plaintiff's counsel's August 14, 1997, FOIA request for the Coactive letter. Defendant, in turn, contends that plaintiff received the redacted Coactive letter on or about September 11, 1997, and was informed by GSA that the reason for sending a redacted version of the letter was based on a statutory exemption that allows GSA to withhold financial records if release of the information could potentially harm the enterprise that furnished the information. In fact, the redactions contained the alleged defamatory statements described above, not financial information.

Plaintiff asserts that while it was aware of the May 16, 1997, Teng report, it was unaware and lacked direct knowledge of defendant's statements in the May 1, 1997, Coactive letter until it received an unredacted copy of this letter on September 9, 1998. According to plaintiff, until September 9, 1998, it was unaware of the context in which the statements in the Coactive letter were made, the identity of the person who had made the statements, and whether the statements were actionable.

### SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1209 (7th Cir.1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set

forth specific facts showing there is a genuine issue for trial. See Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See *Fisher v. Transco Services–Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir.1992). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Stewart v. McGinnis*, 5 F.3d 1031, 1033 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### DISCUSSION

Defendant argues that Count I is barred by the one-year statute of limitations that governs defamation actions in Illinois, 735 ILCS 5/13–201. The discovery rule governs limitations in Illinois and "postpone[s] the starting of the period of limitations until the injured party knows or should have known of his injury." *City National Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 282 (7th Cir. 1994) (quoting *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 58 Ill.Dec. 725, 728, 430 N.E.2d 976 (1981)). "The discovery rule does not allow a plaintiff to wait until the defendant admits it has caused plaintiff's damage," and it "places the burden on plaintiffs to inquire as to the existence of a cause of action." *Carey v. Kerr–McGee Chemical Corporation*, 999 F.Supp.

1109, 1116 (N.D.Ill.1998). According to defendant, plaintiff knew of defendant's allegedly defamatory comments over a year before it filed the instant lawsuit.

■ Plaintiff responds that the statute of limitations did not begin to run until September 8, 1998, the date it first obtained an unredacted copy of the Coactive letter. Plaintiff argues that until this date it could not have properly pled its defamation claim in accordance with the Federal Rules of Civil Procedure's *haec verba* pleading requirement, which requires a plaintiff raising a defamation claim to set forth in her complaint the alleged defamatory words published or spoken by the defendant. *Chisholm v. Foothill Capital Corp.*, 940 F.Supp. 1273, 1284 (N.D.Ill. 1996).[3] The rationale of the *haec verba* requirement is that "general knowledge of the exact language used is necessary to form a responsive pleading." *Id.* Courts in this district, however, have held that the defamatory language need not be quoted verbatim. *Id.; Vantassell–Matin,* 741 F.Supp. 698, 707–08 (N.D.Ill.1990); *Pelech v. Klaff–Joss, LP,* 828 F.Supp. 525, 534 (N.D.Ill.1993).

■ In the instant case, plaintiff has admitted that the comments contained in the May 1, 1997, Coactive letter and alleged to be libelous in the complaint are the same comments that Teng & Associates expressly set forth and attributed to defendant in the May 16, 1997, Teng report, which plaintiff received on January 15, 1998, and read by March 12, 1998, at the latest. Although at that point in time, plaintiff had notice that defendant had made negative comments to Teng & Associates about plaintiff's work performance at the Dirksen Building, the Teng report makes no reference to the Coactive letter. Accordingly, the court finds that plaintiff was not then put on a duty of inquiry to discover the Coactive letter or the alleged-

ly defamatory statements contained therein.

■ Even if plaintiff had been put on notice of inquiry on March 12, 1998, plaintiff made a sufficient inquiry by sending an FOIA request to GSA seeking to obtain reports and correspondence from defendant to GSA. GSA responded by forwarding to plaintiff a redacted version of the Coactive letter, stating that it redacted "commercial or financial records" from the letter to avoid competitive injury to defendant's business. Thus, GSA led plaintiff to believe that the redacted portion of the Coactive letter contained commercial or financial information sensitive to defendant, rather than the statements plaintiff has identified as defamatory. By taking GSA at its word, plaintiff had no reason to pursue inquiry into the correspondence that it later discovered contained, not commercial or financial information, but the critical comments on which plaintiff brings this action.

For these reasons, plaintiff cannot be charged with a lack of diligence in pursuing its cause of action against defendant. To hold that the statute of limitations began to run when plaintiff learned in early 1998 that defendant had made critical comments would allow GSA's contractor (defendant) to benefit from a deception apparently conducted to throw plaintiff off the track. Under these circumstances, this court concludes that the running of the statute of limitations would be equitably tolled. *See Moore v. Ford Motor Co.,* 901 F.Supp. 1293, 1298 (N.D.Ill.1995) (citing *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450–451 (7th Cir.1990)).

### CONCLUSION

Defendant's motion for partial summary judgment is denied. This being said, the court has serious doubt that the language

---

**3.** Because federal notice pleading standards are procedural rules, they are applicable to plaintiff's pendent state law claims under *Erie RR. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See, e.g., Chisholm,* 940 F.Supp. at 1284; *Vantassell–Matin v. Nelson,* 741 F.Supp. 698, 707 (N.D.Ill. 1990).

contained in the Coactive letter is defamatory. Plaintiff is directed to file a memorandum addressing this concern on or before August 21, 2000. Defendant shall respond thereto by September 11, 2000. Plaintiff may reply thereto by September 25, 2000. This matter is set for a report and status on November 7, 2000, at 9:00 a.m.