2023 IL App (1st) 230154-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
September 25, 2023

No. 1-23-0154

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| CHRISTINE WILLIAMS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | No. 19 L 65083 |
| MICHAEL STUCKLY, VILLAGE OF TINLEY PARK, | ) | |
| an Illinois municipal corporation, ANMARIE HUMENIK, | ) | The Honorable |
| and MICHAEL W. GLOTZ, | ) | Thomas W. Murphy, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justice Coghlan concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1   *Held:*  Trial court's dismissal of second amended complaint alleging intrusion upon seclusion, false light, and civil conspiracy is affirmed. Trial court's denial of plaintiff's motion for pleading sanctions against defendant and defense counsel is affirmed.

¶ 2     The plaintiff, Christine Williams, appeals the trial court's dismissal with prejudice of her second amended complaint at law against the defendants, Michael Stuckly, the Village of Tinley Park, Anmarie Humenik, and Michael W. Glotz. She also appeals the trial court's denial of her motion for pleading sanctions against defendant Stuckly and his counsel and its denial of her

request for an evidentiary hearing on that motion. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The plaintiff and defendant Stuckly are residents of the Village of Tinley Park (Village) with opposing political allegiances in local politics. Defendant Humenik is an employee of the Village's police department and serves as a part-time clerk. Defendant Glotz is an elected trustee of the Village. Several of the attorneys representing the parties are likewise involved in the local politics and government of the Village.

¶ 5        The original complaint in this case was filed on October 11, 2019, against defendant Stuckly and Adrienne Jasiczek, who was later dismissed as a defendant. It also named Glotz as a respondent in discovery. Although the plaintiff filed it *pro se*, it bore all the hallmarks of having been drafted by an attorney. It sought damages under the tort theories of invasion of privacy, false light, public disclosure of private facts, intrusion upon seclusion, and intentional infliction of emotional distress based on the defendants' alleged involvement in two events.

¶ 6        The first event involved an allegation that, in "multiple publications on social media," defendants Stuckly and Jasiczek "made false statements that Plaintiff was a drug addict, accused Plaintiff of other criminal acts such as theft and criminal damage to property[,] and published false statements intended to impugn the integrity of Plaintiff." It included no further specificity about these statements and accusations. The second was an allegation that Jasiczek had, under false pretenses of needing them for a meeting with the state's attorney, requested and obtained police reports about the plaintiff from the Village in which personal and medical information about the plaintiff had not been redacted. Jasiczek then shared these police reports with defendant Stuckly, who posted private medical information about the plaintiff on social media. Again, it included no specificity about the nature of the information in these police reports or social media posts. No

exhibits were attached to the complaint.

¶ 7        An appearance was soon filed on the plaintiff's behalf by attorney Stephen E. Eberhardt, followed by a first amended complaint. The first amended complaint named five defendants: Stuckly, Jasiczek, the Village, Humenik, and Glotz. As to the Village and Humenik, the first amended complaint pled theories of intrusion upon seclusion, release of private information, and intentional infliction of emotional distress. The factual predicate for the causes of action against these two defendants was an allegation that Humenik, who was a personal friend of Jasiczek, had produced for Jasiczek within 30 minutes of her request the police reports concerning the plaintiff, and she did so without redacting "personal, private and medical information" about the plaintiff. Humenik took these actions on behalf of the Village, as its response to a request by Jasiczek under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)). No greater specificity was pled about the nature of the information in these reports, and no exhibits were attached.

¶ 8        As to defendants Stuckly, Jasiczek, and Glotz, the first amended complaint pled causes of action under tort theories of false light, intrusion upon seclusion, release of private facts, defamation, conspiracy, and intentional infliction of emotional distress. The causes of action were predicated in part on the same incident described above, by which Jasiczek allegedly submitted a FOIA request to the Village for police reports involving the plaintiff, which was fulfilled by Huminek without redacting "personal, private and medical information" about the plaintiff. It further alleged that Jasiczek had done this under the false pretense that the information was needed for a meeting with the state's attorney, but her true intent was to share the police reports with defendant Stuckly to enable him to "publish and comment on the reports on social media." Jasiczek had also shared and discussed the police reports with defendant Glotz, who suggested to and urged defendant Stuckly "to publish defamatory comments about Plaintiff." It alleged that Glotz had

animosity toward the plaintiff for her vocal comments criticizing his conduct and his fitness to serve as an elected official, and because of this animosity he urged defendant Stuckly to "publish information and private information as contained in the police reports on social media."

¶ 9       Additionally, the first amended complaint alleged that defendant Stuckly had posted and published "certain videos, photographs and altered photographs[,] some containing images of Plaintiff" on social media, which had been given to him for this purpose by Glotz. Stuckly further posted "personal and private information of Plaintiff, including medical information, regarding Plaintiff on social media" at the request of Jasiczek and Glotz. It alleged that all three defendants then "commented on the various social media posts making false statements that Plaintiff was a drug addict, accusing Plaintiff of other criminal as theft and criminal damage to property and published false statements intended to impugn the integrity of Plaintiff."

¶ 10      The claims against Jasiczek were thereafter dismissed pursuant to a settlement found to be in good faith. The Village, Huminek, and Glotz filed a motion to dismiss the first amended complaint. They argued in that motion that the factual allegations pled failed to support any of the causes of action against them. They also argued that they were provided with immunity for providing information in response to a FOIA request pursuant, respectively, to sections 2-107 and 2-210 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-207, 2-210 (West 2020)).

¶ 11      Defendant Stuckly also filed a motion to dismiss the first amended complaint. His motion argued that no cause of action could be stated against him for false light, defamation, or conspiracy for referring to the plaintiff as a "drug addict" on social media, due to the plaintiff's own admissions on her Facebook account publicly discussing her struggle with addiction to pain medication. That motion was supported with an affidavit from defendant Stuckly, stating that in

2018-2019, the plaintiff had maintained an account on Facebook which Stuckly had read. He stated in his affidavit that prior to the date on which she had filed this case against him, he had copied a screenshot of a post made by the plaintiff on her Facebook account, which was attached. That post included statements to the effect that "[a]ddiction does suck," that "I had a problem with alcohol and other pills before my surgery and before this pain," and that "I am sick and tired of having to live my life by being tied to a little pill every few hours."

¶ 12 Following significant briefing and oral argument, the trial court ultimately entered an order dismissing all counts of the first amended complaint. The central factor of the trial court's ruling was its finding that the plaintiff's causes of action were all based upon the defendants' alleged disclosure of the same information about the plaintiff's struggles with drug addiction that she had posted on Facebook herself, thereby rendering that information non-private. It also dismissed the false light count without prejudice on the basis that the first amended complaint failed to state with specificity what private information defendant Stuckly or Glotz released, how it was released or distributed, in what manner the plaintiff was portrayed in a false light, or what information was fabricated or fraudulent. The plaintiff was granted leave to file a second amended complaint.

¶ 13 The second amended complaint, which is the operative pleading in this appeal, asserted three causes of action. Count I asserted a claim for intrusion upon seclusion against all four defendants. Count II alleged a theory of false light against defendants Stuckly and Glotz. Count III alleged a claim of conspiracy against all four defendants.

¶ 14 With minor alterations in verbiage, the same facts pled in the first amended complaint were included in the second amended complaint, along with several new allegations. In count I for intrusion upon seclusion against all defendants, the second amended complaint specified that the personal and private information that the defendants had allegedly published about the plaintiff

"included, but was not limited to, publication of a medication being taken by Plaintiff. (Exhibit A)." Exhibit A purports to be an undated post from an unidentified social media site by Stuckly stating, "It's a shame that they have visited many times at the residence. But as they say never a problem." Another user then writes, "[W]ho calls the police if never a problem then?" to which Stuckly replies with a picture of what appears to be two yellow pills.

¶ 15    In count II for false light, the second amended complaint specified that the false and misleading statements published by defendants Stuckly and Glotz "included, but were not limited to, production and publication of numerous fabricated photos and videos of Plaintiff. (See *e.g.* Exhibit B)." Exhibit B then purports to be an undated post on Facebook by Stuckly to a group named "Tinley Taxpayers Unite" of a photograph with the caption, "We really need a drive in theater for Freaky Friday Night Movies." The photograph appears to be crudely manipulated photograph of a person with horns and blood-splattered, discolored skin. The second amended complaint alleges that Exhibit B was produced by Village trustee Colleen Sullivan and given to Glotz, who provided it to Stuckly "to use to 'slam' and 'trash' Plaintiff."

¶ 16    Finally, in count III for conspiracy against all defendants, the second amended complaint alleged that defendant Glotz engages in a pattern and practice of having his political supporters use social media to attack others who comment negatively on his qualifications and actions as a public official. It alleged that Jasiczek, Humenik, and Glotz discussed, agreed, and took concerted action whereby Humenik would release police reports pursuant to a FOIA request to the Village, and that Glotz and Stuckly discussed, agreed, and took concerted action to publish the plaintiff's personal information on social media as described in the preceding counts. In support of its conspiracy claim, the second amended complaint attached Exhibit C, which purports to be two exchanges of text messages between Glotz and "Nancy Ohshaw" (which the plaintiff alleges is

Nancy O'Connor, the Village clerk and a supporter of Glotz) and a third exchange between Glotz and an unidentified individual. In the first, Glotz purportedly writes, "Ok just report her and I'll let Stuckles trash her." In the second, he purportedly writes, "Can I give this to Stuckly to slam her[?]" And in the third, he purportedly writes, "Oh we are so posting those… Well, Stuckly will."

¶ 17    Motions to dismiss the second amended complaint were filed on behalf of all defendants. The motion by defendants Humenik, Glotz, and the Village asserted that the second amended complaint failed to provide simple allegations necessary to support claims for intrusion upon seclusion or false light. They argued, for example, that it contained no factual detail about the exact nature of the private or false information released, how it was released, to whom it was released, or the date when the allegedly tortious acts occurred. They also argued that the second amended complaint failed to include factual allegations about how the information involved was private, given the plaintiff's own Facebook posts about drug addiction that had led to the trial court's dismissal of the first amended complaint. They argued that the second amended complaint failed to allege how the production of police reports pursuant to a FOIA request constituted an intrusion upon seclusion. They argued that the count for conspiracy must be dismissed also based upon the failure of the second amended complaint to sufficiently allege an independent tort. And they again argued that the claims against the Village and Huminek must be dismissed under sections 2-107 and 2-210 of the Tort Immunity Act. *Id.* §§ 2-107, 2-210.

¶ 18    Defendant Stuckly's amended motion to dismiss the second amended complaint argued that the intrusion upon seclusion count against him was an improper repleading of a count that had previously been dismissed with prejudice. It argued that count II failed to state a claim for false light due to the court's earlier finding that the plaintiff rendered this information non-private by posting about her addiction on Facebook. It argued that Stuckly had immunity for republishing

statements made by others via an interactive computer service under section 230 of the Communications Decency Act of 1996 (47 U.S.C. § 230 (2018)). It argued that count III failed to state a claim for conspiracy because no underlying tort in furtherance of a conspiracy was alleged. And it argued that the second amended complaint should be dismissed in its entirety because its allegations were so vague that Stuckly was unable to determine what statements the plaintiff was accusing him of making.

¶ 19    The motions were briefed, and the trial court conducted oral argument on October 13, 2022. At the conclusion of that hearing, the trial court granted both motions and dismissed all counts of the second amended complaint with prejudice. The trial court's comments at the hearing, along with its explanation in its later order of January 12, 2023, indicate that it found that the factual allegations were lacking specificity and that the plaintiff had waived privacy in the issue of her drug addiction through her own post on her Facebook account acknowledging the matter.

¶ 20    Despite failing to prevail on the motions to dismiss, the plaintiff thereafter filed a motion for pleading sanctions against defendant Stuckly and his attorney. The plaintiff's motion set forth eight actions which it asserted were sanctionable in totality: (1) when Stuckly's counsel filed his additional appearance in the case, he failed to serve it on plaintiff's counsel in accordance with supreme court rules; (2) he filed the motion to dismiss the first amended complaint prior to seeking leave to withdraw the answer that was filed by his co-counsel; (3) he failed to consult with his own co-counsel, specifically to determine whether an answer had already been filed in the case; (4) he drafted a pleading which was never filed but contained purposeful misrepresentations; (5) his motions to dismiss were procedurally improper, contained false, irrelevant, and misquoted statements, and included " 'derogatory' and 'disgusting' comments" about plaintiff's counsel which he took "childish revelry" in making; (6) he disregarded court-ordered deadlines and orders

to serve pleadings; (7) he refused to forward copies of his motion to dismiss to delay a scheduled hearing in July 2022; and (8) he made purposefully misleading arguments intended to deceive the court and to harass plaintiff's counsel. The plaintiff argued that these issues warranted the presentation of further evidence requiring an evidentiary hearing.

¶ 21　　　Defendant Stuckly and his counsel declined to brief the motion. The trial court denied the plaintiff's request to conduct an evidentiary hearing, but it did hold an oral argument at which both attorneys made argument. On January 12, 2023, the trial court issued a written order denying the plaintiff's motion for sanctions. The trial court stated in that order that after reviewing the parties' motions, it found that the defendant had not committed any violations of Supreme Court Rule 137 (eff. Oct. 1, 2018). The court noted that it had made allowances for both parties to deviate from strict adherence to court procedures. The plaintiff thereafter filed a timely notice of appeal.

¶ 22　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 23　　　　　　　　　　　A. Dismissal of Second Amended Complaint

¶ 24　　　This appeal is before the appellate court following the trial court's dismissal of the plaintiff's second amended complaint pursuant to motions brought under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). That statute allows for combined motions raising grounds for dismissal under both sections 2-615 and 2-619 of the Code (*id.* §§ 2-615, 2-619). Section 2-615 allows for motions that test the legal sufficiency of a complaint, while section 2-619 allows for motions that admit the legal sufficiency of the complaint but raise outside defenses that defeat the claim. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Relevant here, section 2-619(a)(9) permits involuntary dismissal where the claim is "barred by other affirmative matter." 735 ILCS 5/2-619(a)(9) (West 2022). In ruling on such a motion, the court must accept as true all well-pleaded facts, as well as any reasonable inferences that arise

from them, but it cannot accept as true mere conclusions unsupported by specific facts. *Patrick Engineering*, 2012 IL 113148, ¶ 31. The standard of review is *de novo*. *Id.* Under this standard, this court may affirm the trial court's judgment on any basis that is supported by the record. *American Steel Fabricators, Inc. v. K&K Iron Works, LLC*, 2022 IL App (1st) 220181, ¶ 17.

¶ 25    The plaintiff's primary argument on appeal is that the trial court erred in granting the defendants' motions to dismiss and thereby dismissing all counts of her second amended complaint with prejudice. She argues that the trial court improperly resolved contested issues of fact, specifically about whether and when she made a post to her Facebook account discussing her struggles with drug addiction. She argues that all three counts of her second amended complaint contain sufficient allegations of fact to support the causes of action pled, and none of the defenses raised by the defendants are sufficient to defeat her claims at the pleading stage.

¶ 26    We disagree and hold that the trial court ruled properly when it dismissed the plaintiff's second amended complaint with prejudice. As explained below, we find that the factual allegations pled in the second amended complaint fall far short of stating causes of action for intrusion upon seclusion, false light, or civil conspiracy.

¶ 27                                    *1. Intrusion Upon Seclusion*

¶ 28    Count I of the second amended complaint purports to state a cause of action against all four defendants under the privacy tort of intrusion upon seclusion. The elements required to prove intrusion upon seclusion are (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is highly offensive or objectionable to a reasonable person; (3) that the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering. *Jacobson v. CBS Broadcasting, Inc.*, 2014 IL App (1st) 132480, ¶ 47. The third element of the tort, requiring allegations that the facts or matter intruded upon is private, is a predicate for the

other three elements. *Id.*; *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 72 (2004).

¶ 29    Further, the basis of this tort is not publication or publicity; rather, it is the offensive prying into the private domain of another. *Lovgren v. Citizens First National Bank of Princeton*, 126 Ill. 2d 411, 417 (1989); accord *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 981 (1990). Examples of actionable conduct include invading an individual's home, an illegal search of his or her shopping bag in a store, eavesdropping by wiretapping, peering into the windows of a private home, and persistent and unwanted telephone calls. *Lovgren*, 126 Ill. 2d at 417 (citing W. Prosser & W. Keeton, Torts § 117, at 854-55 (5th ed. 1984)). It may also include investigation or examination into an individual's private concerns, such as by opening personal mail, searching a wallet, examining a private bank account, or compelling a person by forged court order to permit inspection of personal documents. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 33 (quoting Restatement (Second) of Torts § 652B cmt. b, at 378-79 (1977)); accord *Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 2011 IL App (2d) 101257, ¶ 29 (accessing and reading plaintiff's personal e-mail account). The harm must result from an act of intrusion or prying analogous to the above examples, as opposed to resulting from an act of publication. *Lovgren*, 126 Ill. 2d at 417.

¶ 30    The plaintiff argues that an unauthorized intrusion or prying into her seclusion is adequately alleged by the facts pled in count I. She cites the allegations that defendant Glotz unlawfully used his official status to view or receive information in the records of the Village that detailed police responses to the plaintiff's home; that he directed Jasiczek to make a FOIA request to the Village for those police reports; and that defendant Humenik improperly produced materials beyond the scope of the FOIA request and did so without redacting "personal, private and medical information" contained in them. She further cites allegations that Jasiczek provided the police

reports to Stuckly, who shared them with Glotz and published information on social media, including "publication of a medication being taken by Plaintiff."

¶ 31    For their part, the defendants argue that the allegations in count I relate solely to publication and do not allege injury from an "intrusion." We agree that certainly the gravamen of the plaintiff's allegations involve publication, and count I contains no allegation that any anguish or suffering was caused by an act of intrusion (as opposed to a later publication). More significant, however, is that the facts pled in count I fail to show an "unauthorized" intrusion or prying into the plaintiff's private information. To the extent an intrusion is alleged, it is not an intrusion into private information in the possession of the plaintiff; instead, the allegation is that a Village officer (Glotz) and employee (Humenik) accessed official records belonging to the Village. Generally, an organization's accessing of its own records is not an unauthorized intrusion for purposes of this tort. See *e.g.*, *Dwyer v. American Express Co.*, 273 Ill. App. 3d 742, 746 (1995); *Mucklow v. John Marshall Law School*, 176 Ill. App. 3d 886, 894 (1988); *In re Trans Union Corp. Privacy Litigation*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004). The conclusory allegation that Glotz accessed the police reports "unlawfully" is insufficient to overcome this rule.

¶ 32    Furthermore, the alleged intrusion here involved records subject to a FOIA request that were obtained in that context. Without attaching the police reports to the complaint or describing in detail the "personal, private, and medical information" contained in them, the court is unable to credit any assertion that they included information which the plaintiff had the right to expect would be kept private. The examination of a public record concerning a plaintiff is not an unauthorized intrusion upon seclusion. Restatement (Second) of Torts § 652B cmt. c, at 379 (1977). Further, section 7(1)(c) of FOIA provides that a public body "*may* elect to redact" personal information contained within public records, the disclosure of which would constitute unwarranted invasion of

privacy. (Emphasis added.) 5 ILCS 140/7(1)(c) (West 2022). The plaintiff has cited no authority supporting the argument that she had a reasonable expectation that information included within police reports concerning her would be kept private. For these reasons, we hold that count I of the second amended complaint fails to state a cause of action for intrusion upon seclusion.

¶ 33                                    *2. False Light*

¶ 34        Count II of the second amended complaint purports to state a claim for the privacy tort of false light against defendants Stuckly and Glotz. This tort protects a person's interest in being free from false publicity. *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 83. A claim for false light requires a plaintiff to plead and prove that (1) the plaintiff was placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for their truth or falsity. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 17-18 (1992); *Benton*, 2020 IL App (1st) 190549, ¶ 83.

¶ 35        The plaintiff argues that count II of the second amended complaint properly pled an action for false light upon which relief could be granted. However, the argument on this point in her brief consists mostly of a cut-and-paste copy of the paragraphs of the second amended complaint of which count II is comprised (*i.e.*, paragraphs 28-40 and 53-58). She asserts that the defendants' use of "phony/alias Facebook pages," the ease with which they could block her from viewing posts made by them, and Stuckly's refusal to comply with discovery orders should excuse her from pleading with precision those facts that are within the defendants' knowledge and control.

¶ 36        We conclude that count II fails to plead facts stating a cause of action for false light. The paragraphs comprising count II are replete with allegations to the effect that Stuckly, at the urging

and for the political benefit of Glotz, made "multiple publications on social media" that placed the plaintiff in a false light. This included statements that she was a "drug addict," statements accusing her of theft and criminal property damage, and "videos, photographs, altered photographs and manipulated false statements as well as personal information, including medical information" about the plaintiff. It further alleges that Stuckly and Glotz both added comments to these various social media posts, further placing the plaintiff in a false light.

¶ 37        However, with the exceptions addressed below, none of the "multiple" social media publications, posts, or comments are attached as exhibits to the second amended complaint or otherwise set forth with the actual words, photographs, or videos used in the context in which they were published. Without this information, it is impossible for the court or the defendants to understand and evaluate the plaintiff's allegations that she was placed in a false light by specific words or conduct of the defendants. For example, the allegations imply that the plaintiff is alleging numerous instances of tortious conduct by the defendants, but it is impossible to know from the second amended complaint how many such instances are being alleged. They suggest that false statements were published by both defendants without specificity as to which defendant published what. They are silent as to the dates when any of the alleged publications were made. Even the allegation that things were published on "social media" is vague. "Social media" is a broad term. This is important because a false light claim requires the plaintiff be placed in a false light "before the public," which means that the size and nature of the audience viewing the publication can matter. See *Poulos v. Lutheran Social Services of Illinois, Inc.*, 312 Ill. App. 3d 731, 739-40 (2000). Something may be actionable if published in a Facebook post visible to the world at large but nonactionable if it is shared only through a group text among a handful of people with whom the plaintiff had no relationship. The allegations of the second amended complaint are simply too

vague for the court to say that they are closer to the former category than to the latter.

¶ 38       The parties focus their arguments on the allegation of count II that the defendants placed the plaintiff in a false light by referring to her as a "drug addict" on social media. However, their arguments center on the trial court's finding that the plaintiff waived the issue of privacy in this matter through her own post on Facebook in which she discussed this topic publicly. We find no reason to address this waiver argument, though, because we find that the allegations of the second amended complaint suffer from the more fundamental defect of being too vague and unclear as to what the plaintiff is alleging in this regard. Principally, it is not clear whether the plaintiff is alleging a direct quote or is characterizing other evidence. While the second amended complaint places quotation marks around the phrase "drug addict," the original and first amended complaints contained identical allegations without using quotation marks. Also, the second amended complaint attaches exhibit A, which purports to be a post by Stuckly to an unidentified social media site of a photograph of two yellow pills.[1] It is not clear from the allegations whether this is the social media post to which the plaintiff is referring by her allegation that Stuckly called her a drug addict. The plaintiff was challenged on this point in Stuckly's motion to dismiss the second amended complaint, and the plaintiff's response did not refute this assertion or clarify the relationship, if any, between the "drug addict" allegations and the photograph attached as exhibit A. Additionally, paragraph 9 of the second amended complaint alleges that Stuckly falsely stated that the plaintiff was a "drug addict" in "multiple publications on social media," whereas paragraph 33 alleges that both Stuckly and Glotz "all commented on the various social media posts making false statements that Plaintiff was a 'drug addict.' " In sum, the allegations that the defendants

---

[1] Exhibit A is technically incorporated only into an allegation pled in support of count I for intrusion upon seclusion.

referred to the plaintiff as a "drug addict" are subject to the same deficiencies we identified in the preceding paragraph and are simply insufficient to support a claim for false light.

¶ 39    The only other allegation of count II that is somewhat specific is its attachment of exhibit B, which purports to be an undated Facebook post by Stuckly to a group named "Tinley Taxpayers Unite" of a photograph captioned, "We really need a drive in theater for Freaky Friday Night Movies." As described above, the photograph is a crudely manipulated photograph of a person with what appear to be horns and blood-splattered, discolored skin. No further facts are alleged in the second amended complaint specific to exhibit B.

¶ 40    However, the plaintiff makes no argument in her appellate brief about exhibit B or how it purportedly places her in a false light. Her only reference to it occurs when she quotes paragraph 56 of the second amended complaint, stating: "The false and misleading statements as made and published by Defendant Stuckly and Defendant Glotz included, but were not limited to, production and publication of numerous fabricated photos and videos of Plaintiff. (See *e.g.* Exhibit B.)" By failing to include any argument in her brief concerning this exhibit, this court could only speculate about how this exhibit could relate to the plaintiff or how its publication could place her in a false light. We decline to engage in this speculation and conclude that any argument by the plaintiff that exhibit B provides a sufficient basis to go forward on a claim for false light has been forfeited by the failure to argue this point. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in appellant's opening brief] are forfeited").

¶ 41    *3. Civil Conspiracy*

¶ 42    The plaintiff also argues that the trial court erred in dismissing count III of the second amended complaint, which purports to state a claim against all four defendants for civil conspiracy predicated on the conduct alleged to be tortious in counts I and II. However, conspiracy is not an

independent tort. *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936 (2004). Where, as here, a plaintiff fails to state an independent cause of action underlying the conspiracy allegations, the claim for civil conspiracy fails also. *BMO Harris Bank, N.A. v. Jackson Towers Condominium Ass'n, Inc.*, 2018 IL App (1st) 170781, ¶ 35; *Thomas*, 345 Ill. App. 3d at 936.

¶ 43                                    *4. Dismissal with Prejudice*

¶ 44        Given that our holding is that the second amended complaint fails to state a cause of action, the final question is whether dismissal with prejudice is proper. We address this as a matter of completeness, even though the plaintiff makes no argument on this point. The general rule is that dismissal of a complaint should be with prejudice only where it clearly appears the plaintiff can prove no set of facts entitling the plaintiff to recovery. *Mayle v. Urban Realty Works, LLC*, 2022 IL App (1st) 210470, ¶ 81.

¶ 45        Here, the second amended complaint was the plaintiff's third opportunity to state viable claims based on allegations concerning the defendants' posts about her on social media and the release of unredacted police reports through a FOIA request. The first amended complaint had been dismissed after the defendants filed motions pointing out specific ways in which that pleading was deficient in its alleging of basic facts to support the claims pled. The trial court's written order dismissing the first amended complaint specifically stated that the intrusion upon seclusion count failed to allege conduct amounting to an unauthorized intrusion into the plaintiff's privacy or seclusion, and its false light count failed to specify what private information that either defendant released, how it was released or distributed, in what manner the plaintiff was portrayed with false light, or what information was fabricated or fraudulent. Nevertheless, we find no real attempt in the second amended complaint to overcome the defects cited in the trial court's order and the defendants' motions to dismiss. Although it removed some counts and changed some verbiage, its

factual allegations were largely identical to those of the first amended complaint. Most of the allegations it added were conclusory legal allegations, not facts. It did attach three exhibits but made no effort to allege facts showing how these exhibits supported the claims pled.

¶ 46 In light of the above, along with the absence of any argument by the plaintiff that she could state any viable cause of action if allowed an additional chance to replead, we hold that dismissal of the action with prejudice is proper. See *OnTap Premium Quality Waters, Inc. v. Bank of Northern Illinois, N.A.*, 262 Ill. App. 3d 254, 265 (1994) (dismissal with prejudice was proper where factual basis and counts pled in second amended complaint remained substantially unchanged from prior dismissed complaints); *Schiller v. Mitchell*, 357 Ill. App. 3d 435, 453 (2005) (dismissal of second amended complaint with prejudice affirmed). Here, the plaintiff was given three opportunities to allege an actionable wrong on the part of the defendants, and we find no indication in this case that the plaintiff could plead or prove any set of facts entitling her to recovery if given a fourth.

¶ 47                                              B. Denial of Sanctions

¶ 48 The plaintiff's second principal argument on appeal is that the trial court erred in denying her motion for pleading sanctions against defendant Stuckly and his attorney and in refusing to hold an evidentiary hearing on that motion. The plaintiff's motion sought to impose sanctions under Illinois Supreme Court Rule 137(a) (eff. Jan. 1, 2018), which authorizes a trial court to impose sanctions against attorneys or parties who sign and file frivolous pleadings, motions, or other documents that lack a basis in law or fact. The signature of an attorney or party on such document constitutes a certification "that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed

for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Id.* The determination of whether to impose sanctions under Rule 137 rests within the sound discretion of the trial court; its decision to impose or deny sanctions is entitled to great weight on appeal and will not be disturbed absent abuse of discretion. *Benson v. Stafford*, 407 Ill. App. 3d 902, 928-29 (2010).

¶ 49    After setting forth the relevant legal standards for sanctions under Rule 137, the entirety of the argument on this point in the plaintiff's appellate brief is as follows:

"Plaintiff's Motion and the incorporated Exhibits detailed a litany of improper actions taken by Mr. Walsh during his representation of Defendant Stuckly herein. Even without development of further facts, the pleadings and attached Exhibits made clear that sanctions were appropriate.

The Circuit Court erred in disregarding Mr. Walsh's purposeful violation of the provisions of the Civil Practice Act, Supreme Court Rules and the Circuit Court's own Orders and not sanctioning Mr. Walsh and Mr. Stuckly."

¶ 50    Defendant Stuckly contends that this is an "inadequate and undeveloped argument" which we should deem forfeited. We agree that forfeiture would be appropriate here, as the incorporation by reference of a trial court brief does not satisfy the requirement that an appellant's argument be set forth in his or her opening brief.  See *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) (citing *People v. Guest*, 166 Ill. 2d 381, 413-14 (1995)); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 51    However, even overlooking the forfeiture we can easily conclude that the trial court did not abuse its discretion in denying the plaintiff's motion for pleading sanctions. The situation presented here was unusual, in which a plaintiff was seeking pleading sanctions against a defendant despite the dismissal of the plaintiff's own action at the pleading stage. The eight "sanctionable

actions" set forth in the plaintiff's motion largely involve procedural infractions, such as the failure to serve documents properly and the filing of motions that were not procedurally proper. They also include actions such as "name calling" and making alleged misrepresentations or misleading statements. The trial court, being familiar with this case after having presided over it for several years, was in a far better position than this court to evaluate whether the acts of defendant's counsel were improper and to determine whether they were efforts at harassment, delay, or increasing the cost of litigation. Having reviewed the plaintiff's motion, the attached exhibits, and the record in its entirety, we find no error in the trial court's ruling that neither defendant Stuckly nor his counsel violated Rule 137 in this case.

¶ 52    We further reject the plaintiff's argument that the trial court erred in refusing to grant an evidentiary hearing on the motion for sanctions. A trial court has the discretion to determine that an evidentiary hearing is not necessary for it to deny a motion for pleading sanctions. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 154-55 (1993); accord *Reverse Mortgage Solutions, Inc. v. Rahman*, 2017 IL App (1st) 161035, ¶ 33. The plaintiff argues that an evidentiary hearing was necessary for the trial court to determine how defendant Stuckly's counsel came to represent him after another attorney employed by Stuckly's homeowner's insurance carrier had already filed an appearance on his behalf. We disagree that an evidentiary hearing was necessary for this purpose, and we find no abuse of discretion by the trial court in declining to hold an evidentiary hearing.

¶ 53                                      III. CONCLUSION

¶ 54    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 55    Affirmed.

¶ 56    JUSTICE PUCINSKI, specially concurring:

¶ 57     I reluctantly concur in the majority's analysis and decision.  Discourse in election campaigns has taken a decidedly ugly turn, and all courts should take seriously the damaging effect of social media, fake media, misuse of personal information, hijacked photographs and other campaign material which is designed simply to malign an opponent with half truths and untrue statements.  To be sure, voters are entitled to know the good, the bad and the ugly about candidates for election and political activists. But things have gotten out of hand when police reports, which would not be evidence in a court, are purposefully used in a smear campaign.  And, to morph addiction to pain killers into being a "drug addict" brings the normal connotation of addiction to illegal drugs, which is decidedly not correct in this case. I concur only because the second amended complaint did not provide the specificity necessary to properly bring the elements of plaintiff's case to the attention of the trial court or to this panel of the appellate court.